## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **MARIA HIDALGO** | ) | **CASE NO.** |
| **765 Montana Vista** | ) | |
| **PO Box 3706** | ) | |
| **Anthony, New Mexico 88021** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **JOSE HIDALGO** | ) | |
| **765 Montana Vista** | ) | **COMPLAINT AND DEMAND** |
| **PO Box 3706** | ) | **FOR JURY TRIAL** |
| **Anthony, New Mexico 88021** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | |
| | ) | |
| **PFIZER INC.** | ) | |
| **235 East 42nd Street** | ) | |
| **New York, New York  10017** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

COME NOW the Plaintiffs, Maria and Jose Hidalgo, by and through their undersigned attorneys, and for their causes of action, hereby sue the Defendant, Pfizer Inc., and allege as follows:

### PREAMBLE

1.      This is an action for damages suffered by Plaintiffs as a proximate result of Defendant's negligent and wrongful conduct in connection with the design, testing, and labeling, of LIPITOR (also known chemically as ATORVASTATIN CALCIUM).

2.      Plaintiffs' injuries, like those striking thousands of similarly situated victims across the country, were avoidable. LIPITOR has been implicated in a national epidemic of type 2 diabetes in women taking LIPITOR. In August of 2011, the FDA requested that Pfizer make labeling changes for LIPITOR based upon the Food and Drug Administration's ("FDA")

1

comprehensive review, including clinical trial data. The label change required Defendant to warn of the changes in blood sugar levels when taking LIPITOR. Defective design, inadequate warnings, and inadequate instructions led to serious patient complications, including type 2 diabetes, as happened to Mrs. Hidalgo.

3.      Even though Defendant knew of the risks for several years, medical providers were unaware that the use of LIPITOR caused type 2 diabetes in female patients. As a result, thousands of women taking LIPITOR were unaware that the drug was affecting their blood sugar levels. Even when Defendant finally began disclosing some of this information, it refused to protect patients. For example, when Defendant finally changed its label in February of 2012, the warning it issued was extremely vague and in no direct terms did it warn that consumption of LIPITOR could lead to the development of type 2 diabetes.

4.      According to the Centers for Disease Control ("CDC"), diabetes is the seventh leading cause of death in the United States. People with diabetes can experience numerous serious and deadly complications, including heart disease and stroke, blindness, chronic kidney disease, and amputations. The risk for stroke is two to four times higher among people with diabetes. Adults with diabetes have heart disease death rates about two to four times higher than adults without diabetes. Diabetes is the leading cause of new cases of blindness among adults ages 20-74, and is also the leading cause of kidney failure.

5.      Additionally, adults with diabetes are also at an increased risk of developing cardiovascular disease, thus LIPITOR leads to the very disease that it was designed to prevent.

6.      The development of type 2 diabetes is preventable with the proper monitoring of blood sugar levels. As such, the development of type 2 diabetes in patients taking LIPITOR was also preventable and resulted directly from Defendant's refusal to conduct proper safety studies;

follow up alarming safety signals; suppression of information revealing life-threatening risks; wanton failure to provide adequate instructions; and willful misrepresentations concerning the nature and safety of its product. The conduct and product defects complained of herein were substantial factors in bringing about the Plaintiffs' injuries, and a reasonably foreseeable consequence of Defendant's conduct and product defects.

## PARTIES

1.     Plaintiff, Maria Hidalgo, resides at 765 Montana Vista, PO Box 3706, Anthony, New Mexico 88021 and is a citizen and resident of the United States and of Dona Ana County, New Mexico.

2.     Plaintiff, Jose Hidalgo, is the spouse of Maria Hidalgo, who resides at 765 Montana Vista, PO Box 3706, Anthony, New Mexico 88021 and is a citizen and resident of the United States and of Dona Ana County, New Mexico.

3.     At all times herein mentioned, Defendant was and is a corporation existing under the laws of incorporation of the State of Delaware, with its principal place of business at 235 East 42nd Street, New York, New York 10017.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over Defendant and this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendant.

5.     The amount in controversy between Plaintiffs and Defendant exceeds $75,000, exclusive of interest and cost.

6.     This Court has personal jurisdiction over Defendant by virtue of:

        a.     Pfizer transacting business within New Mexico;

3

b.      Pfizer contracting to supply LIPITOR to distributors and retailers for resale to physicians hospitals, pharmacies, and medical practitioners;

c.      Pfizer, producing, manufacturing, distributing, advertising, promoting, supplying, and selling LIPITOR to distributors and retailers for resale to physicians, hospitals, pharmacies, and medical practitioners with the reasonable expectation that LIPITOR would be used or consumed in New Mexico and are/were so used and consumed by patients including Mrs. Hidalgo;

d.      Pfizer's causing harm or tortious injury in New Mexico; and

e.      Pfizer's violation of New Mexico's Unfair Trade Practices Act (N.M. Stat. Ann. §§ 57-12-1 *et seq*.) within the State of New Mexico.

7.      Venue is proper within this district pursuant to 28 U.S.C. § 1391 because Plaintiffs reside in this district and because a substantial part of the acts and/or omissions giving rise to these claims occurred within this district.  Plaintiff, Mrs. Hidalgo, purchased Defendant's pharmaceutical drug, LIPITOR, in Dona Ana County, New Mexico and ingested LIPITOR at her home in Anthony, Dona Ana County, New Mexico.

## FACTUAL ALLEGATIONS

### A.  Case General Facts

8.      LIPITOR is prescribed to reduce the amount of cholesterol and other fatty substances in the blood.  LIPITOR is an HMG-CoA reductase inhibitor and a member of the drug class known as statins.

9.      Parke-Davis Pharmaceutical Research, a division of Warner-Lambert Company, obtained approval from the FDA to market LIPITOR on December 17, 1996.  Warner-Lambert entered into a co-marketing agreement with Pfizer to sell LIPITOR, and thereafter those

4

companies began distributing and selling LIPITOR throughout the United States in 1997.  On June 19, 2000, Pfizer acquired Warner-Lambert and all rights to LIPITOR.

10.     Despite its knowledge of data indicating that LIPITOR use is causally related to the development of type 2 diabetes and/or blood glucose levels diagnostic for type 2 diabetes, Pfizer promoted and marketed LIPITOR as safe and effective for persons such as Mrs. Hidalgo throughout the United States.

11.     On August 11, 2011, the Division of Metabolism and Endocrinology Products of the FDA requested that Defendant make labeling changes for LIPITOR based upon the FDA's comprehensive review, including clinical trial data.

12.      In February 2012, Pfizer added the following language to its Warnings and Precautions Section: "Increases in HbA1c and fasting serum glucose levels have been reported with HMG-CoA reductase inhibitors, including LIPITOR."

13.     Prior to the February 2012 change, LIPITOR's label had never warned patients of any potential relation between changes in blood sugar levels and taking LIPITOR.

14.     Despite the February 2012 label change, that warns in the most obtuse terms of a potential elevation of blood sugar, LIPITOR's label continues to fail to warn consumers or their physicians directly of the serious risk of developing type 2 diabetes per se.

15.     At all times material hereto, Defendant knew or should have known that the risks of LIPITOR included the severe and life-threatening complications of type 2 diabetes.

16.     Astra Zeneca is the manufacturer of a competitor statin, Crestor. As of August 2013, Astra Zeneca warns in its package insert that Crestor has been shown to increase the risk of diabetes mellitus.  Although this is a class wide effect for all statins to varying degrees, Pfizer chooses not to affix a similar warning.

5

B. **Case Specific Facts**

17.     In 2008, Plaintiff, Maria Hidalgo, was a 58 year-old woman when she consulted with her physician, Claudio Perez-Ledezma, M.D. of Anthony, New Mexico, for general medical care. Dr. Perez-Ledezma prescribed LIPITOR to Mrs. Hidalgo and instructed her to use it as directed beginning in October of 2008.

18.     Dr. Perez-Ledezma prescribed LIPITOR to Mrs. Hidalgo to lower her levels of low-density lipoprotein ("LDL") and as a preventive measure to decrease her risk of developing cardiovascular disease ("CVD").

19.     Mrs. Hidalgo agreed to initiate LIPITOR treatment in an effort to reduce her risk of developing heart disease. She relied on claims made by Pfizer that LIPITOR was clinically proven to reduce her risk of developing heart disease.

20.     Three years after she began treatment with LIPITOR, Mrs. Hidalgo was diagnosed with type 2 diabetes in or about January of 2011.

21.     As a result, for the rest of her life, Mrs. Hidalgo must undergo regular testing of her blood glucose levels, adhere to a restrictive diabetic diet, maintain an exercise regimen, and take medication to control her diabetes. As a consequence of her diabetes, Mrs. Hidalgo has developed fatigue, worsening vision, and kidney infections. Mrs. Hidalgo is now also at a markedly increased risk of developing heart disease, neuropathy, and blindness.

22.     Had Defendant properly disclosed the risks associated with LIPITOR, Mrs. Hidalgo would have avoided the risk of diabetes by either not using LIPITOR at all or by closely monitoring her blood glucose levels to see if the drug was adversely affecting her metabolism.

23.     As alleged herein, as a direct and proximate result of Defendant's negligent conduct, and the unreasonably dangerous and defective characteristics of the drug LIPITOR,

Mrs. Hidalgo suffered severe and permanent physical and emotional injuries, including, but not limited to, type 2 diabetes.  Plaintiffs have further incurred losses and damages including pain and suffering, emotional distress, loss of enjoyment of life; loss of consortium; suffered economic loss, including incurring significant expenses for medical care and treatment.

24.     Plaintiffs will continue to incur such losses, damages, and expenses in the future.

## COUNT I
### Negligence

25.     Plaintiffs hereby incorporate by reference as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

26.     At all times material hereto, Defendant had a duty to exercise ordinary care, and comply with the existing standards of care, in the design, development, manufacture, testing, inspection, packaging, promotion, marketing, distribution, labeling, and/or sale of LIPITOR to consumers.

27.     Defendant breached its duty of ordinary care to Mrs. Hidalgo, and failed to comply with existing standards of care, in that it negligently promoted, marketed, distributed, and labeled LIPITOR, and was otherwise negligent:

    a.     In its design, development, research, manufacture, monitoring, testing, packaging, promotion, marketing, sale, and/or distribution of LIPITOR;

    b.     In its failure to warn or instruct, and/or adequately warn users of LIPITOR, including Mrs. Hidalgo, of LIPITOR's dangerous and defective characteristics;

    c.     In its design, development, implementation, administration, supervision, and/or monitoring of clinical trials for LIPITOR;

7

       d.     In its promotion of LIPITOR in an overly aggressive, deceitful, and fraudulent manner, despite evidence as to the product's defective and dangerous characteristics due to its propensity to cause diabetes;

       e.     In representing that LIPITOR was safe for its intended use when, in fact, the product was unsafe for its intended use;

       f.     In failing to perform appropriate pre-market testing of LIPITOR;

       g.     In failing to perform appropriate post-market surveillance of LIPITOR;

       h.     In failing to adequately and properly test LIPITOR before and after placing it on the market;

       i.     In failing to conduct sufficient testing on LIPITOR which, if properly performed, would have shown that LIPITOR had the serious side effect of causing type 2 diabetes;

       j.     In failing to adequately warn Mrs. Hidalgo and her healthcare providers that the use of LIPITOR carried a risk of developing type 2 diabetes and that patients' blood glucose should be closely monitored;

       k.     In failing to provide adequate post-marketing warnings or instructions after Defendant knew or should have known of the significant risk of diabetes associated with the use of LIPITOR; and

       l.     In failing to adequately and timely inform Mrs. Hidalgo and the healthcare industry of the risk of serious personal injury, namely type 2 diabetes, from LIPITOR ingestion as described herein.

28.     Mrs. Hidalgo's injuries and damages alleged herein were and are the direct and proximate result of Defendant's negligence.

29.     Had Defendant exercised ordinary care, and complied with the then existing standards of care, Mrs. Hidalgo would not have been injured.

30.     Defendant knew or should have known that consumers, such as Mrs. Hidalgo, would foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care.

31.     As a direct and proximate result of Defendant's carelessness and negligence, Mrs. Hidalgo suffered and will continue to suffer severe and permanent physical and emotional injuries, including, but not limited to, type 2 diabetes, as described with particularity, above. Plaintiffs have endured and will continue to endure pain, suffering, loss of enjoyment of life, and loss of consortium; and have suffered and will continue to suffer economic loss, including incurring significant expenses for medical care and treatment.

## COUNT II
### Strict Tort Liability

32.     Plaintiffs hereby incorporate by reference as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

33.     Defendant has engaged in the business of selling, distributing, supplying, manufacturing, marketing, and/or promoting LIPITOR, and through that conduct has knowingly and intentionally placed LIPITOR into the stream of commerce with full knowledge that it is expected to and does reach consumers such as who ingested it unaltered from the form it left the hands of the Defendant.

34.     Defendant did in fact sell, distribute, supply, manufacture, and/or promote LIPITOR to Mrs. Hidalgo and to her prescribing physicians.  Additionally, Defendant expected the LIPITOR that it was selling, distributing, supplying, manufacturing, and/or promoting to reach – and LIPITOR did in fact reach – prescribing physicians and consumers, including Mrs.

Hidalgo and her prescribing physicians, without any substantial change in the condition of the product from when it was initially distributed by Defendant.

35.     At all times herein mentioned, the aforesaid product was defective and unsafe in manufacture such that it was unreasonably dangerous to the user, and was so at the time it was distributed by Defendant and ingested by Mrs. Hidalgo.  The defective condition of LIPITOR includes, but is not limited to, the fact that LIPITOR has never at any time been accompanied by proper warnings regarding the possible side effect of developing diabetes as a result of its use.

36.     These defects, individually or in conjunction with one another, caused serious injury to Mrs. Hidalgo, who used LIPITOR in its intended and foreseeable manner.

37.     At all times herein mentioned, Defendant had a duty to properly design, manufacture, compound, test, inspect, package, label, distribute, market, monitor, examine, maintain supply, provide proper warnings, and take such steps to assure that the product did not cause users to suffer from unreasonable and dangerous side effects.

38.     Defendant recklessly labeled, distributed, and promoted the aforesaid product that it was dangerous and unsafe for the use and purpose for which it was intended.

39.     Defendant recklessly failed to warn of the nature and scope of the side effects associated with LIPITOR, namely type 2 diabetes.

40.     Defendant was aware of the probable consequences of the aforesaid conduct. Despite the fact that Defendant knew or should have known that LIPITOR caused serious injuries, it failed to exercise reasonable care to warn of the dangerous side effect of developing diabetes from LIPITOR use, even though this side effect was known or reasonably scientifically knowable at the time of distribution.  Defendant willfully and deliberately failed to avoid the

consequences associated with its failure to warn, and in doing so, Defendant acted with a conscious disregard for the safety of Mrs. Hidalgo.

41.      Mrs. Hidalgo could not have discovered any defect in LIPITOR through the exercise of reasonable care.

42.      Defendant, as the manufacturer and/or distributor of LIPITOR, is held to the level of knowledge of an expert in the field.

43.      Mrs. Hidalgo reasonably relied upon the skill, superior knowledge, and judgment of Defendant Pfizer.

44.      Had Defendant properly disclosed the risks associated with LIPITOR, Mrs. Hidalgo would have avoided the risk of diabetes by either not using LIPITOR at all or by closely monitoring her blood glucose levels to see if the drug was adversely affecting her metabolism.

45.      As a direct and proximate result of Defendant's conduct and defective product, Mrs. Hidalgo has suffered and will continue to suffer severe and permanent physical and emotional injuries, including, but not limited to, type 2 diabetes, as described with particularity, above.  Plaintiffs have endured and will continue to endure pain, suffering, loss of enjoyment of life, and loss of consortium; and have suffered and will continue to suffer economic loss, including incurring significant expenses for medical care and treatment.

## COUNT III
### Strict Tort Liability – Failure to Warn

46.      Plaintiffs hereby incorporate by reference as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

47.      At all times relevant to this action, Defendant engaged in the business of designing, manufacturing, testing, marketing, labeling and placing into the stream of commerce LIPITOR for sale to, and use by, members of the public.

11

48.     At all times relevant to this action, the dangerous propensities of LIPITOR were known to Defendant or were reasonably and scientifically knowable to them, through appropriate research and testing by known methods, at the time they distributed, supplied, or sold their respective product, and not known to ordinary physicians who would be expected to prescribe LIPITOR for their patients.

49.     The LIPITOR manufactured and distributed by Defendant reached Mrs. Hidalgo without substantial change and was ingested as directed for its intended purposes.

50.     Mrs. Hidalgo could not have discovered any defect in LIPITOR through the exercise of care.

51.     Defendant, as the manufacturer of pharmaceutical products, including LIPITOR, is held to the level of knowledge of an expert in the field.

52.     Defendant marketed LIPITOR in multiple ways, including, but not limited to. direct-to-consumer advertisements, which were misleading in that Defendant overstated the safety and efficacy of LIPITOR and understated its risks.

53.     The LIPITOR was defective and unreasonably dangerous in that the labeling was insufficient to adequately warn physicians of the risk of patients developing type 2 diabetes.

54.     The defective warnings were a substantial factor in bringing about the injuries to Plaintiffs that would not have occurred but for the use of the product.

55.     The warning was necessary to avoid unreasonable risk of harm, namely type 2 diabetes, from a foreseeable use of LIPITOR.

56.     As a direct and proximate result of Defendant's carelessness and negligence, Mrs. Hidalgo suffered and will continue to suffer severe and permanent physical and emotional injuries, including, but not limited to, type 2 diabetes, as described with particularity, above.

12

Plaintiffs have endured and will continue to endure pain, suffering, loss of companionship, loss of enjoyment of life, and loss of consortium; and have suffered and will continue to suffer economic loss, including incurring significant expenses for medical care and treatment.

## COUNT IV
**Breach of Implied Warranty**

57.     Plaintiffs hereby incorporate by reference as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

58.     At all times mentioned herein, Defendant manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied, and sold LIPITOR, and prior to the time that it was prescribed to Mrs. Hidalgo, Defendant impliedly warranted to Mrs. Hidalgo that LIPITOR was fit and safe for the ordinary purpose for which it is used.

59.     Mrs. Hidalgo, individually and through her prescribing physicians, reasonably relied upon the skill, superior knowledge, and judgment of Defendant.

60.     Mrs. Hidalgo was prescribed, purchased, and used LIPITOR for its intended purpose.

61.     Due to Defendant's wrongful conduct as alleged herein, Mrs. Hidalgo could not have known about the nature of the risks and side effects associated with LIPITOR until after she had been injured by its use.

62.     Contrary to Defendant's implied warranty for LIPITOR, LIPITOR was neither safe nor fit for its intended uses and purposes, as alleged herein.

63.     As a direct and proximate result of Defendant's breach of implied warranty, Mrs. Hidalgo suffered and will continue to suffer severe and permanent physical and emotional injuries, including, but not limited to, type 2 diabetes, as described with particularity, above. Plaintiffs have endured and will continue to endure pain, suffering, loss of enjoyment of life, and

13

loss of consortium; and have suffered and will continue to suffer economic loss, including incurring significant expenses for medical care and treatment.

## COUNT V
### Negligent Misrepresentation

64.    Plaintiffs hereby incorporate by reference as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

65.    Pfizer, in the course of its business, made representations that LIPITOR was safe and effective to Mrs. Hidalgo, her physician and other medical providers when it marketed its product to them but failed to provide any warning that LIPITOR caused changes in blood glucose levels.

66.    Pfizer, in the course of its business, had a duty to use reasonable care in conveying information about LIPITOR to Mrs. Hidalgo, her physician and other medical providers using LIPITOR.

67.    Pfizer, in the course of its business, breached this duty by negligently representing that LIPITOR was safe and effective and failing to disclose material facts concerning the risks that LIPITOR posed to patients, particularly type 2 diabetes.

68.    Pfizer knew or should have known, under the circumstances, that those representations were false.

69.    The false information supplied by Pfizer to Mrs. Hidalgo, her physician and other medical providers using LIPITOR, was that LIPITOR was safe, effective, and would not harm or adversely affect patients' health, including Mrs. Hidalgo, when used as directed.

70.    The representations and false information communicated by Pfizer to Mrs. Hidalgo, her physician and other medical providers using LIPITOR were material and Mrs. Hidalgo and other medical providers using LIPITOR detrimentally relied on the

misrepresentations and concealments, and as a direct and proximate result of such reliance, Mrs. Hidalgo suffered and will continue to suffer severe and permanent physical and emotional injuries, including, but not limited to, type 2 diabetes, as described with particularity above. Plaintiffs have endured and will continue to endure pain, suffering, loss of enjoyment of life, and loss of consortium; and have suffered and will continue to suffer economic loss, including incurring significant expenses for medical care and treatment.

### COUNT VI
**Fraud**

71.     Plaintiffs hereby incorporate by reference as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

72.     Defendant represented to Mrs. Hidalgo, her prescribing physicians, and the healthcare industry that LIPITOR was a safe and effective product while fraudulently and intentionally concealing material information, including adverse information, regarding the safety and effectiveness of LIPITOR.

73.     As studies have shown, LIPITOR is not safe and is causally related to the development of type 2 diabetes and/or blood glucose levels diagnostic for type 2 diabetes.

74.     Representations that LIPITOR is safe and effective are material as consumers and medical providers rely on these representations from drug manufacturers in prescribing, purchasing and using their products,

75.     Defendant made representations regarding the safety and effectiveness of LIPITOR while concurrently actively concealing adverse information when Defendant knew and/or showed a reckless disregard of its truth, that LIPITOR had defects, dangers, and characteristics that were other than what Defendant had represented to Mrs. Hidalgo and the

healthcare industry generally.   Specifically, Defendant actively concealed from Mrs. Hidalgo, her prescribing physicians, the health care industry, and the consuming public that:

        a.    Since at least 1996 Defendant and/or its predecessors were in possession of data demonstrating that LIPITOR increases the risk of type 2 diabetes and the risk of increased blood glucose to levels diagnostic for type 2 diabetes;

        b.    There had been insufficient studies by Defendant and/or its predecessors regarding the safety and efficacy of LIPITOR in women before and after its product launch;

        c.    LIPITOR was not fully and adequately tested by Defendant and/or its predecessor for the risk of developing type 2 diabetes; and

        d.    Testing and studies by other entities as reported in the scientific literature has shown that the use of LIPITOR increases the risk of type 2 diabetes.

76.   The representations made by Pfizer that LIPITOR was a safe and effective product and/or active concealment alleged were perpetuated directly and/or indirectly by Defendant.

77.   Defendant knew and/or showed a reckless disregard of its truth that these representations were false, and it made the representations with the intent or purpose of deceiving Mrs. Hidalgo, her prescribing physicians, and the healthcare industry.

78.   Defendant made these false representations with the intent or purpose that Plaintiff, her prescribing physicians, and the healthcare industry would rely on them, leading to the use of LIPITOR by Mrs. Hidalgo as well as the general public.

79.   At all times herein mentioned, neither Mrs. Hidalgo nor her physicians were aware of the falsity of the statements being made by Defendant and believed them to be true.

Had they been aware of said facts, her physicians would not have prescribed and Mrs. Hidalgo would not have used LIPITOR.

80.     Mrs. Hidalgo relied on Defendant's representations and/or active concealment and relied on the absence of safety information which Defendant did suppress, conceal, or fail to disclose in purchasing and using LIPITOR.

81.     Mrs. Hidalgo, her physician, and the healthcare industry, justifiably relied on Pfizer's representations that LIPITOR was safe and effective as it is reasonable that Mrs. Hidalgo, her physician, and the healthcare industry would rely on the statements of Pfizer regarding whether LIPITOR was safe because as the manufacturer of LIPITOR, they are held to the level of knowledge of an expert in the field.

82.     As a result of the concealment of the facts set forth above, Mrs. Hidalgo ingested LIPITOR and suffered and will continue to suffer severe and permanent physical and emotional injuries, including, but not limited to, type 2 diabetes, as described with particularity above. Plaintiffs have endured and will continue to endure pain, suffering, loss of enjoyment of life, and loss of consortium; and have suffered and will continue to suffer economic loss, including incurring significant expenses for medical care and treatment.

### Count VII
### Violation of New Mexico's Unfair Trade Practices Act
### N.M. Stat. Ann. §§ 57-12-1 *et seq*.

83.     Plaintiffs hereby incorporate by reference as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

84.     Defendant's sale, marketing, promotion and distribution of LIPITOR under the guise that it was a safe and effective product were unfair and/or deceptive acts or practices.

85.    Defendant knew or should have known that LIPITOR was not safe or effective and had side effects, which included the development of type 2 diabetes.

86.    Defendant's unfair and deceptive conduct, as herein alleged, occurred in the conduct of trade or commerce; the course of sale of a good, to wit, LIPITOR.

87.    Consumers, including Mrs. Hidalgo, purchased and used LIPITOR based on the representations made by Pfizer that it was safe and effective in reducing cholesterol.

88.    By making these false and misleading misrepresentations and omissions, Defendant, intended that Mrs. Hidalgo would rely on its false statements and material omissions, and to intend to induce Mrs. Hidalgo to purchase and use LIPITOR.

89.    Mrs. Hidalgo was induced to purchase and use LIPITOR by relying on the statements and representations made by Defendant that were false, misleading, and deceptive because LIPITOR is not safe and effective and causes type 2 diabetes.

90.    The unfair, false, misleading and deceptive practices of Defendant, did cause Mrs. Hidalgo to incur severe and permanent physical and emotional injuries, including, but not limited to, type 2 diabetes, as described with particularity above.  Plaintiffs have endured and will continue to endure pain, suffering, loss of enjoyment of life, and loss of consortium; and have suffered and will continue to suffer economic loss, including incurring significant expenses for medical care and treatment.

91.    Because Defendant knowingly and willfully engaged in unfair and/or deceptive acts and practices, in the conduct of trade or commerce, Mrs. Hidalgo is entitled to recover her reasonable attorneys' fees and costs from Defendant as provided for in N.M. Stat. Ann. § 57-12-10.

## COUNT VIII
### Loss of Consortium

92.     Plaintiffs incorporate by reference as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

93.     At all relevant times stated herein, Plaintiff, Jose Hidalgo, was and is the husband and spouse of Plaintiff, Maria Hidalgo.

94.     Before Mrs. Hidalgo suffered the above-described permanent injuries as a result of taking LIPITOR, she and her husband enjoyed a marital relationship characterized by mutual support and shared activities, including both social and recreational activities and other marital activities.

95.     As a proximate result of Defendant's tortious conduct, Mrs. Hidalgo has suffered significant permanent injury to her person that substantially changes her lifestyle and has rendered her unable to perform the types of services and activities that she previously performed.

96.     As a proximate result of the injuries sustained by Mrs. Hidalgo, as set forth above, Mr. Hidalgo has suffered and will continue to suffer loss of consortium, including but not limited to emotional distress due to the loss of his wife's society, guidance, companionship, and sexual relations.

97.     As a result of the injuries sustained by Mrs. Hidalgo, as set forth above, Plaintiffs Maria and Jose Hidalgo, sustained and will continue to sustain damages to their marital relationship.

## COUNT IX
### Punitive Damages

98.     Plaintiffs hereby incorporate by reference as if fully set forth herein, each and every allegation contained in the foregoing paragraphs.

99.     At all times material hereto, Defendant knew or should have known that LIPITOR was inherently dangerous with respect to the risk of type 2 diabetes.

100. At all times material hereto, Defendant attempted to misrepresent and did knowingly misrepresent facts concerning the safety of LIPITOR.

101. Defendant's misrepresentations included knowingly withholding material information from the medical community and the public, including Mrs. Hidalgo, concerning the safety of LIPITOR. Defendant's conduct was willful, wanton, and undertaken with a conscious disregard for the rights of consumers, including Mrs. Hidalgo.

102. At all times material hereto, Defendant knew and recklessly disregarded the fact that LIPITOR causes the chronic illness type 2 diabetes.

103. Notwithstanding the foregoing, Defendant continued to market LIPITOR aggressively to consumers, including Mrs. Hidalgo, without disclosing the aforesaid side effect.

104. Defendant knew of LIPITOR's lack of warnings regarding the risk of diabetes, but it intentionally concealed and/or recklessly failed to disclose that risk and continued to market, distribute, and sell LIPITOR without said warnings so as to maximize sales and profits at the expense of the health and safety of the public, including Mrs. Hidalgo, in conscious disregard of the foreseeable harm caused by LIPITOR.

105. Defendant's intentional and/or reckless failure to disclose information deprived Mrs. Hidalgo of necessary information to enable her to weigh the true risks of using LIPITOR against its benefits.

106. As a direct and proximate result of Defendant's willful, wanton, careless, reckless, conscious, and deliberate disregard of the rights of Mrs. Hidalgo, Mrs. Hidalgo suffered and will continue to suffer severe and permanent physical and emotional injuries, including, but not limited to, type 2 diabetes, as described with particularity above. Plaintiffs have endured and will continue to endure pain, suffering, loss of enjoyment of life, and loss of consortium; and

have suffered and will continue to suffer economic loss, including incurring significant expenses for medical care and treatment.

107. Defendant's aforesaid conduct was committed with knowing, conscious, careless, reckless, willful, wanton, and deliberate disregard of the rights of consumers, including Mrs. Hidalgo, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish Defendant and deter it from similar conduct in the future.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment against Defendant as follows:

(a)   For general damages in a sum in excess of the jurisdictional minimum of this Court;

(b)   For medical, incidental, and hospital expenses according to proof;

(c)   For pre-judgment and post-judgment interest as provided by law;

(d)   For full refund of all purchase costs Mrs. Hidalgo paid for LIPITOR;

(e)   For compensatory and general damages in excess of the jurisdictional minimum of this Court;

(f)   For consequential damages in excess of the jurisdictional minimum of this Court;

(g)   Past, present and future damages for loss of Mrs. Hidalgo's society, guidance, companionship, and sexual relations.

(h)   For punitive damages in an amount in excess of any jurisdictional minimum of this Court and in an amount sufficient to impress upon Defendant the seriousness of its conduct and to deter similar conduct in the future;

(i)   For attorneys' fees and costs of this action pursuant to **N**.M. Stat. Ann. §§ 57-12-1 *et seq*.; and

(j)      For such further relief as this Court deems necessary, just, and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all counts and as to all issues.


Dated: February 5th, 2014.                    Respectfully submitted,


                                             BRANCH LAW FIRM


                                             _____
                                             Turner W Branch, Esq.
                                             2025 Rio Grande Boulevard NW
                                             Albuquerque, New Mexico 87104
                                             Telephone: (505) 243-3500
                                             Facsimile: (505) 243-3534
                                             Email: tbranch@branchlawfirm.com

                                             *Counsel for Plaintiffs*

*Pro Hac Vice Admission to be sought for:*

Robert K. Jenner, Esquire
Lindsey M. Craig, Esquire
Janet, Jenner & Suggs, LLC
1777 Reisterstown Road, Suite 165
Baltimore, Maryland 21208
Telephone: (410) 653-3200
Facsimile:  (410) 653-9030

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Hidalgo, Maria<br>Hidalgo, Jose | Pfizer, Inc. |

| **(b)** County of Residence of First Listed Plaintiff   Dona Ana County<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant   New York County<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF<br>THE TRACT OF LAND INVOLVED. |
|---|---|
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)*<br>Turner W. Branch, Branch Law Firm<br>2025 Rio Grande Boulevard NW, Albuquerque, New Mexico 87104<br>(505) 243-3500 | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government
     Plaintiff

☐ 2 U.S. Government
     Defendant

☐ 3 Federal Question
     *(U.S. Government Not a Party)*

☒ 4 Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                              *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place<br>of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place<br>of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a<br>Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment<br> & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted<br> Student Loans<br> (Excludes Veterans)<br>☐ 153 Recovery of Overpayment<br> of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product<br> Liability<br>☐ 320 Assault, Libel &<br> Slander<br>☐ 330 Federal Employers'<br> Liability<br>☐ 340 Marine<br>☐ 345 Marine Product<br> Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle<br> Product Liability<br>☐ 360 Other Personal<br> Injury<br>☐ 362 Personal Injury -<br> Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury -<br> Product Liability<br>☒ 367 Health Care/<br> Pharmaceutical<br> Personal Injury<br> Product Liability<br>☐ 368 Asbestos Personal<br> Injury Product<br> Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal<br> Property Damage<br>☐ 385 Property Damage<br> Product Liability | ☐ 625 Drug Related Seizure<br> of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal<br> 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and<br> Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/<br> Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information<br> Act<br>☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/<br> Accommodations<br>☐ 445 Amer. w/Disabilities -<br> Employment<br>☐ 446 Amer. w/Disabilities -<br> Other<br>☐ 448 Education | **Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate<br> Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee -<br> Conditions of<br> Confinement | ☐ 710 Fair Labor Standards<br> Act<br>☐ 720 Labor/Management<br> Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical<br> Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement<br> Income Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration<br> Actions | Act/Review or Appeal of<br> Agency Decision<br>☐ 950 Constitutionality of<br> State Statutes<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff<br> or Defendant)<br>☐ 871 IRS—Third Party<br> 26 USC 7609 |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
     Proceeding

☐ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     Another District
     *(specify)*

☐ 6 Multidistrict
     Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332

Brief description of cause:
Personal Injuries arising out of the use of a defective product

| VII. REQUESTED IN<br>COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION<br>UNDER RULE 23, F.R.Cv.P. | DEMAND $<br>2,500,000.00 | CHECK YES only if demanded in complaint:<br>JURY DEMAND:   ☒ Yes   ☐ No |
|---|---|---|---|

## VIII. RELATED CASE(S)
## IF ANY

*(See instructions)*      JUDGE _____      DOCKET NUMBER _____

DATE  2/5/14                 SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse  (Rev. 12/12)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**   **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.